## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### SOUTHERN DIVISION
### AT LONDON

**CIVIL CASE NO. 15-13-WOB-CJS**

**WILLIS ROGER BOGGS**                                                                 **PLAINTIFF**

**v.**                                       **REPORT AND RECOMMENDATION**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                            **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

Plaintiff Willis Roger Boggs brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying his application for benefits under Title II and Title XVI of the Social Security Act.[1]  This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits.  After a thorough review of the administrative record, for the reasons explained below, it will be **recommended** that Plaintiff's Motion for Summary Judgment (R. 11) be **denied**, and the Commissioner's Motion for Summary Judgment (R. 12) be **granted**.

## I.    STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is

---

[1]The right to court review of the Commissioner's final determination of a claim under Title XVI is provided in 42 U.S.C. § 1383(c)(3), which references § 405(g).

supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that he is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that he is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (*citing*

2

20 C.F.R. §§ 404.1520(b), 416.920(b)).  Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment.  *Id*. at 803-04.  "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'"  *Id*. at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience.  *Id*. (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)).  Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work.  *Id*.  Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work that exists in the national economy.  *Id*. (*citing Abbott*, 905 F.2d at 923).  Throughout this process, the claimant carries the overall burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.  *Id*. (*quoting Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 548 (6th Cir. 2004)).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's alleged disability began on January 25, 2012, when he was 35 years old. (Administrative Record (A.R.) 177, 184).  Plaintiff testified that he completed the eleventh grade, and was in special education classes.  (*Id*. at 33, 52).  He has prior relevant work experience as a groundskeeper and as a laborer for an underground mine.  (*Id*. at 34; 58).  Plaintiff originally claimed that his ability to work is limited by possible hepatitis C, clubbed feet, problems with ankles, feet and knees, depression, high blood pressure, lack of education and the fact he does not like to go

3

outside.  (*Id*. at 216).   During the administrative hearing, Plaintiff testified that he also has osteoarthritis, which causes his ankle, knee and hip pain; lower back pain; poor hearing in his right ear; hepatitis B and C, which make him tired; and anxiety.  (*Id*. at 37-57).  Plaintiff further testified that he requires the use of a cane to keep his balance.  (*Id*. at 53).

On or about May 22, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income.  (A.R. 177-95).  These claims were denied initially and again upon reconsideration.  (*Id*. at 65-88, 93-120, 121-24, 129-34).  At Plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) Donald A. Rising on August 13, 2013.  (*Id*. at 29-64). Plaintiff appeared and testified at the hearing.  (*Id*.).  The ALJ also heard testimony from an impartial vocational expert (VE).  (*Id.* at 57-63).  After receiving testimony and reviewing the record, the ALJ issued a written decision on October 3, 2013, finding Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at 12-23).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id*. at 93-102).  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since January 25, 2012–the alleged onset date of his disability.  (A.R. 95).  At step two, the ALJ determined that Plaintiff had the severe impairments of "residuals status post club foot surgeries; osteoarthritis; essential hypertension; affective disorder; and anxiety disorder."  (*Id*. at 14-18).

At step three, the ALJ found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in any of the Listings of Impairments under the applicable Federal Regulation, and he specifically explained his consideration of Listing 12.04.  (*Id*. at 18-19).  At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform

4

medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).  (*Id.* at 19).  Specifically, he found Plaintiff:

> can lift and carry 25 pounds frequently and 50 pounds occasionally; stand and walk about 6 hours and sit about 6 hours in an 8-hour workday; however, he cannot perform continuous sit/stand longer than about 30 minutes.  He can frequently climb stairs, stoop, kneel, crouch, and crawl.  The claimant can perform no climbing of ladders, ropes, or scaffolds.  The claimant is limited to simple instructions and tasks but is limited to casual and infrequent coworker contact, occasional public contact, and gradual and infrequent changes in routine and no work in occupations involving high production rate or quota requirements.  The claimant is limited to work requiring no greater than a 4th-6th grade reading ability.

(*Id.* at 19-20).

At the hearing, the ALJ heard testimony from an impartial VE and adopted his opinion that, based on the RFC provided by the ALJ, an individual with such limitations could not perform Plaintiff's past relevant work. (A.R. at 58-59).  The VE also opined that an individual with the stated RFC would be unable to perform any jobs requiring medium exertion because that occupational base does not permit alternating between sitting and standing.  (A.R. at 58-61).  The VE testified, however, that given an individual of Plaintiff's age, education, work experience, and RFC cited above, there are jobs requiring light exertion that exist in significant numbers in the national economy that such an individual can perform.  (*Id.*).  The VE testified that such representative occupations include: hand packing, small parts inspector, production worker and hand assembly work.  (*Id.*).  The ALJ adopted the VE's opinions, and concluded that Plaintiff was not "disabled" for social security purposes.  (*Id.* at 23).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, and submitted additional medical records to the Appeals Council that were not before the ALJ.  (A.R. 1-6, 676-713).  The Appeals Council incorporated into the record the medical evidence that predated the

ALJ's October 3, 2013, decision.[2]   (*Id.*).   On December 15, 2014, after consideration of the additional records predating the ALJ's decision, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's October 3, 2013, decision denying Plaintiff benefits the final decision of the Commissioner.  (*Id.* at 1-5).

On February 3, 2015, having exhausted his administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not supported by substantial evidence and was contrary to the law.  (R. 2).  Plaintiff has filed a Motion for Summary Judgment, arguing that the ALJ erred in failing to properly consider the totality of the evidence in the record, including the medical reports, and in his assessment of Plaintiff's credibility.  (R. 11-1, at 9-12).

## III.    ANALYSIS

### A.    The Court cannot consider evidence submitted to the Appeals Council

In his Motion, Plaintiff argues the ALJ failed to properly consider his treatment at Cumberland River Comprehensive Care Center and, in support, he cited to some records first provided to the Appeals Council.  (R. 11-1, at 11 (*citing* A.R. 675-710)).  The Sixth Circuit has held that "where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) *(citing Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)).  This Court is limited to reviewing the record before the ALJ unless a plaintiff can show,

---

[2]The Appeals Council explained that the records it received postdating the ALJ's October 3, 2013, decision were not relevant to the current disability decision about whether Plaintiff was disabled on or before October 3, 2013.  (A.R. 2).  The Appeals Council informed Plaintiff he needed to reapply for benefits if he is seeking a disability determination for a time period after October 3, 2013.  (*Id.*).

pursuant to sentence six of § 405(g), that the evidence is new, material, and there is good cause for his failure to incorporate it into the record at an earlier stage.  42 U.S.C. § 405(g); *see also Cotton*, 2 F.3d at 695-96.

Here, Plaintiff has not requested a sentence six remand.  (R. 11-1).  Even if the arguments in Plaintiff's Motion are construed as raising a "sentence six" remand issue, he has not articulated any argument demonstrating good cause for not having submitted this evidence for the ALJ's consideration.  *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) (denying sentence six remand upon finding no showing of good cause for failing to submit medical notes dated a month or more before the ALJ's decision for consideration by the ALJ);  *Dunn v. Astrue*, No. 5:10-cv-312-DCR, 2011 WL 1630287, at *3 (E.D. Ky. Apr. 29, 2011) (declining to consider sentence six remand where plaintiff did not request it and did not attempt to articulate an argument that requirements for remand were met); *Washam v. Astrue*, No. 6:08-cv-07-JMH, 2009 WL 864743, at *4 (E.D. Ky. Mar. 30, 2009) (sentence six remand not warranted where plaintiff made no attempt to show good cause for failing to provide the ALJ with a report dated 15 days before the ALJ's decision).  Therefore, the Court will not recommend a sentence six remand, and it cannot consider this additional evidence in determining whether to uphold, modify, or reverse the ALJ's decision under sentence four of 42 U.S.C. § 405(g).  *Cline*, 96 F.3d at 148 (*citing Cotton*, 2 F.3d at 695-96).

## B.      The ALJ properly considered the medical evidence

Plaintiff argues that the ALJ failed to properly consider all of the medical evidence in reaching his RFC determination.  (R. 11-1, at 9-11).  In support, he states that the ALJ failed "to properly address the restrictions of the claimant as shown by the medical evidence."  Plaintiff alludes to a claim that the ALJ selectively looked at the record and considered only portions of the evidence

7

that cast him in a "favorable," presumably as not disabled, light.  (*Id*. at 10).  He also claims the ALJ

"acted as his own medical expert in assessing the medical opinions [him]self."  (*Id*. at 9).  Plaintiff

contends that when the record is considered in its entirety it demonstrates that he cannot perform

even a wide-range of sedentary work.  (*Id*. at 10).

In social security cases, the ALJ is responsible for assessing a claimant's RFC.  *Coldiron v.

Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).  Under the regulations, an ALJ must

consider all the relevant medical evidence and the claimant's testimony in forming a claimant's RFC.

20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  "An ALJ does not improperly assume the role of a

medical expert by weighing the medical and non-medical evidence before rendering an RFC

finding."  *Coldiron,* 391 F. App'x at 439.

Plaintiff has not established that the ALJ did not consider the entire record before him in

rendering his decision.  In fact, the only medical evidence Plaintiff specifically alleges the ALJ did

not consider was his treatment at Cumberland River Comprehensive Care Center.  (R. 11-1, at 11).

Plaintiff argues that these records establish he has a psychological impairment and that they support

the opinion of Dr. Spangler, a non-treating physician who performed a consulting psychological

exam at the request of Plaintiff's counsel.  Contrary to Plaintiff's argument, review of the ALJ's

decision demonstrates that he specifically discussed the treatment records from Cumberland River

Comprehensive Care Center that were in the administrative record at the time he rendered his

decision.  The ALJ stated:

> [t]he claimant testified that he is anxious and uses a "nerve" medication for sleep and
> agitation.  He reported claustrophobia and intolerance to crowds although he asserted
> that he is involved in AA as a requirement for his recovery program and attends
> meetings with up to 50 people.  The record in this regard shows that the claimant was
> treated for a period of time at the Comprehensive Care Center, the records of which

show primarily situational factors affecting mood, most predominately, financial worries and history of drug abuse. An intake record of February 28, 2012, shows that the claimant denied any relationship problems with his parents or wife and stated that he was doing fine and that 'things going good at home" (9F/4). He reported a long history of drug abuse involving multiple drugs of choice but alleged sobriety from all, during 2012. In relation to that, he reported involvement in a recovery program and prescription for Suboxone. He related that he had limited income and upon inquiry admitted that he was able to afford his prescription by giving part of his medication to "sponsors." He also reported using Klonopin but complained of poor sleep and difficulty controlling his anger. He endorsed a longstanding problem with depression, manifested in part by isolating from others. However, he stated he was involved in AA and described having a good relationship with family members and his AA sponsor as well as noting "no problems" in societal/role functioning and that friendships were "alright."

Despite all, a mental status examination in May 2012 was essentially normal aside from subjective complaints and questionable reliability regarding his report of frequent mood swings which he attributed to "bipolar," although there is no record of such a diagnosis. Mr. Boggs was noted to have poor insight into his problems but he denied suicidal ideation and there was no evidence of a psychotic process. Mr. Boggs was assessed with a GAF of 55 throughout the course of treatment. The *American Psychiatric Association: Diagnostic and Statistical Manual, Fourth Edition, Test Revision 2000*, p. 34, defines a GAF of 51-60 as "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." From this record it does not appear that the claimant was ever prescribed antidepressant or other psychotropics, in part, because he did not feel he would be given anything "strong enough" and evaluation by Dr. Raza confirmed the working diagnoses. He followed for a short time thereafter, but due to failure to appear for his appointments, his chart was closed in November 2012 (Exhibits 5F and 9F).

(A.R. 16).

While the ALJ did not discuss each specific record from this provider, he is not required to do so. *See Bailey v. Comm'r of Soc. Sec*. 413 F. App'x 853, 855 (6th Cir. 2011) ("[the ALJ] is not required to analyze the relevance of each piece of evidence individually). The ALJ's decision leaves no doubt that he considered Plaintiff's treatment at Cumberland River Comprehensive Care Center in reaching his findings. As the Plaintiff has not directed this Court to any other particular evidence that he asserts the ALJ failed to consider, he has not demonstrated any error in this regard.

9

Further, to the extent Plaintiff is asserting that the ALJ did not properly consider the opinion evidence, his argument also fails.  The weight the ALJ gives to a medical opinion depends on a variety of factors, including: whether a source actually treated a claimant, the supportability of the source's opinion, the consistency of the opinion when compared with the record as a whole, as well as other factors.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (*citing* 20 C.F.R. § 404.1527(c)).  While a treating source's opinion is presumed to be entitled to controlling weight, non-treating sources are never assessed for controlling weight.  *Id.* at 376. "As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination." *Id.* at 375 (*citing* 20 C.F.R. §§ 404.1502, 404.1527(c)(1)).  Further, while the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this requirement does not apply when an ALJ discusses the weight afforded a non-treating medical source.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Here, with no opinion from a treating provider,[3] the ALJ discussed the findings of the non-treating, consulting examiners:  Dr. Ford, Dr. Spangler, and Dr. Hill.  (A.R. at 16-18).  After review of the record evidence, the ALJ explained his determination for the weight given these opinions, as well as those of nonexamining state agency reviewers:

> And in terms of opinion evidence I further reject examiner Spangler's assessment of "poor/none" ability to deal with work stresses or demonstrate reliability.  (Exhibit 15F).  Mr. Boggs'[s] departure from the work force was occasioned by lay off rather than physical or mental incapacitation; and, it is difficult to reconcile examiner Spangler's clinical observations or findings such as adequate social skills and the fact that he related well in the exam setting, with the examiner's pessimistic opinion that

---

[3]Plaintiff does not allege, and the record does not support a finding, that Dr. Spangler is a treating physician.

claimant would nonetheless exhibit such limitation in relating to coworkers, supervisors or the public as to result in inadequate work performance.

The State agency nonexamining consultant opined claimant was capable of carrying out simple instructions and tasks and could adapt to routine work setting changes (Exhibit 8A). The undersigned gives great weight to restriction to simple instructions/tasks and adopts that opinion; and, has supplemented the residual functional capacity finding herein with claimant's literacy level per Wide Range Achievement Test results by examiner Spangler. But further, it would appear from examiner Ford's report that limitations in interpersonal interactions and adaption are warranted by her use of such terms as "moderate" limitation relating to others and "moderate" or "marked" limitation tolerating work pressures or stress. (Exhibit 8F). Therefore to capture that, the undersigned has further found herein that claimant would fare best in settings entailing only casual and infrequent coworker contact, occasional public contact, gradual and infrequent changes in routine and no high production rate/quota requirements.

In terms of physical functioning, Dr. Hill opined claimant could reasonably be expected to have difficulty with "strenuous physical activity including heavy lifting, etc." (Exhibit 7F). Nonexamining State agency consultant J. Reed, M.D. gave "great weight" to this opinion, and concluded claimant was capable of a range of medium level exertion that permitted periodic alternation of sitting and standing. (Exhibit 8A). The undersigned adopts that opinion, but as further explained below, claimant is ultimately relegated to a range of "light" exertion occupations because according to the vocational expert the "medium" occupational base would not permit an individual to alternate sitting/standing postures.

(A.R. at 21-22) (footnote omitted).

Here, although not required to give good reasons, the ALJ explained his reasoning for the weight he afforded Dr. Spangler's opinion evidence. Specifically, the ALJ explained he rejected certain of Dr. Spangler's findings because they were not supported by Dr. Spangler's own observations. (A.R. 21-22). In addition, the ALJ explained that Dr. Spangler's opinion that Plaintiff had no useful ability to deal with work stresses or demonstrate reliability was not supported by Plaintiff's testimony that he stopped working because of layoff. (*Id.* at 21). Nevertheless, the ALJ incorporated several limitations in the RFC that are directed at Plaintiff's mental limitations, which

11

are consistent with the medical records and the findings of Dr. Ford and state agency consultant Dr. Warren.[4]

Further, with respect to Plaintiff's physical limitations, the ALJ gave the opinions of Dr. Hill and state agency consultant Dr. Reed great weight. Again, while the regulations do not require the ALJ to provide "good reasons" for the weight he affords the opinions of non-treating physicians, *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), a review of the ALJ's entire decision reveals the ALJ found these opinions supported by the evidence. In his decision, the ALJ reviewed the medical records, noting good results from childhood surgeries to correct his club feet and only minimal/mild positive findings for sporadic musculoskeletal pain in shoulders, right elbow, ankles, knees and lower back. (A.R. 15). The ALJ also noted that while Plaintiff was given work excuses on a number of occasions, his releases all stated he could return to work with no limitations. Further, he noted physical examinations showed only minimal tenderness and one episode of muscle spasm, with no overt signs of musculoskeletal or neurological abnormality. Plaintiff does not articulate a specific challenge to the ALJ's determination of his physical RFC and does not point to any evidence of physical limitation that the ALJ failed to consider.

Despite Plaintiff's argument to the contrary, the ALJ's decision reflects a thorough review of the medical evidence, including consideration of the opinion evidence, and Plaintiff's testimony. The ALJ articulated his reasoning for his RFC decision, and substantial evidence exists to support his findings.

---

[4]These limitations include limiting Plaintiff to: simple instructions and tasks; casual and infrequent coworker contact; occasional public contact; gradual and infrequent changes in routine; no work requiring a high production rate or quota requirements; and no work requiring greater than a 4th-6th grade reading ability. (A.R. 19-20).

## C.      The ALJ properly assessed Plaintiff's credibility

Plaintiff argues that the ALJ improperly rejected his credibility.  (R. 11-1, at 10).  Plaintiff also contends that the ALJ did not make "apparent" his reasons for his credibility determination and asserts his testimony regarding his symptoms is uncontradicted.

It is well established that a plaintiff's subjective complaints of pain can support a disability finding if the record contains "objective medical evidence" of a severe medical condition that "can reasonably be expected to produce the alleged disabling pain."  *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 381 (*quoting Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)).  "Even when the record contains this evidence, however, the ALJ may also consider the credibility of the claimant's subjective complaints."  *Id.* (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003)).  An ALJ may discount a claimant's credibility when the ALJ "finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Id.* (*quoting Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004)).  The ALJ's credibility determinations-when supported by substantial evidence-are entitled to "great weight."  *Id.* (*citing Cruse v. Comm' of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.  (A.R. 20).  In considering Plaintiff's credibility, the ALJ first considered the fact that Plaintiff's alleged onset date of disability is the same day he was laid off work.  (*Id.*).  The ALJ also noted that after he was laid off, Plaintiff applied for unemployment benefits, but ultimately did not receive them.  Further, Plaintiff testified that he looked for other jobs after being laid off, but was unsuccessful.  (A.R. 20,

13

35-37).  The Sixth Circuit has held similar testimony demonstrating an ability to work until being

laid off supported an ALJ's finding that a plaintiff's description of limitations was not entirely

credible.  *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) (finding

plaintiff's testimony that his alleged onset date was also the day he was laid off and that he thereafter

applied for unemployment benefits supported the ALJ's credibility determination).

In addition, the ALJ also noted the medical evidence did not support Plaintiff's complaint

of disabling pain.  The ALJ explained:

> Further, although he has a remote history of surgical intervention for congenital club
> foot deformity bilaterally he has required minimal treatment during the pertinent time
> period relative to foot/ankle complaints.  He does have some residual discomfort
> attributed by Dr. Hill to a lifelong history of altered gait; however, his ambulatory
> ability has remained intact and his clinical/diagnostic findings have shown only
> minimal findings to support his allegations.  In fact, his x-rays failed to reveal any
> bony or soft tissue abnormalities of the knees or ankles and he has no investigatory
> studies of the lumbar spine.  Claimant asserted at one point via application materials
> that he could walk about 1/4 mile or so.  (Exhibit 4E, p.7).  In regard to all of his
> incidents of treatment for sprains/strains, the record shows no referral for physical
> therapy, steroidal injections, or pain management.  He has not required undue
> emergency care for intractable pain and per the clinical record, he was responsive to
> a mild narcotic, Ultram, although in the end, he admitted to taking more than was
> prescribed.  To his credit, he is now involved in a recovery program and uses only
> Suboxone and Klonopin.
>
> The above circumstances erode credibility somewhat.  Also, according to the record
> claimant presented for consultative exam in July 2012 without a cane, and the
> examiner opined he did not need one but "I would expect in the future that that would
> likely be a requirement."  (Exhibit 7F, p. 4).  On claimant's next visit to Tri City
> Medical Center three months later, he received a prescription for a cane (Exhibit 12F,
> p. 3) and while he presented to examiner Spangler with a cane during that December
> 2012 encounter (Exhibit 15F), he then returned to Tri City Medical Center in
> February 2013 at which time it was written he was "[d]oing well on meds.  Needs
> script for cane because wife lost last one."  (Exhibit 16F, p. 3).  The undersigned is
> not persuaded a cane is currently medically necessary.  According to examiner Ford,
> claimant exhibited a normal gait and posture in August 2012.  (Exhibit 8F).  He
> apparently requested a cane prescription two months later, and used a cane at

examiner Spangler's encounter, but if the October 2012 prescription had been filled, then claimant would not require another prescription in February 2013.

(A.R. 20-21).[5]  Thus, the ALJ noted contradictions between the medical reports and Plaintiff's testimony.  *See Steagall*, 596 F. App'x at 381.

Lastly, the ALJ also found Plaintiff's allegation of a disabling mental impairment was not supported by the record.  The ALJ explained:

> The claimant initiated treatment with Comp Care in February 2012, the records of which outline his allegations; however, he refused medications and reported symptoms most consistent with situational depression/anxiety, particularly citing financial worries and history of drug abuse.  In fact, he indicated that he "would like to get a check for being a drug addict" when seen on February 28, but "ain't had time."  This last statement conflicts with his allegation that he does nothing of substance on a daily basis and it is not feasible to assume his abilities declined in the three months prior to application in May 2012, to the extent that he now considered [sic] himself unable to engage in work activity and allegation that his daily activities are significantly eroded.  The record shows that Mr. Boggs had not required any crisis intervention, emergency care, or inpatient treatment for an overt psychiatric diagnosis. . . .

(A.R. 21).  Thus, in reaching his credibility determination, the ALJ considered the medical records, the opinion evidence, Plaintiff's testimony and application materials.[6]

In support of his argument that the ALJ improperly rejected his credibility, Plaintiff argues his testimony is "uncontradicted," and references only his testimony of knee/leg pain:  "[i]t's like a sharp pain.  Mostly all the time."  (R. 11-1, at 9; *see also* A.R. 38-39).  However, as discussed

---

[5]Plaintiff does not argue the ALJ misconstrued the medical note regarding his request for a new prescription for a cane.

[6]Review of the ALJ's decision also revealed that, in step three, the ALJ noted Plaintiff minimized his ability to perform daily activities.  (A.R. 18-19).  The ALJ stated there was nothing in the record to suggest Plaintiff is unable to perform "instrumental activities."  And to the contrary, the ALJ found he is able to self-care, and he also noted that reports in the record recited Plaintiff's own statements that he performed light household chores and odd jobs.  (*Id.*).  This is further support for the ALJ's credibility determination.

above, the ALJ did not specifically find Plaintiff's testimony of sharp pain in his knee/leg was not credible, but that his allegations of disabling limitations and need for a cane were not entirely credible. In fact, the ALJ's RFC determination incorporates a limitation that he not perform continuous sit/stand for longer than 30 minutes. He was also restricted to frequent climbing of stairs, stooping, kneeling, crouching, and crawling, and no climbing of ladders, ropes or scaffolds. (A.R. 19-20). These limitations demonstrate that the ALJ did find Plaintiff had some credible impairment requiring postural limitations that precluded him from performing a full range of medium work.

The ALJ's decision demonstrates that he considered the entire record before him in reaching his credibility determination, and it is supported by substantial evidence. As such, it is entitled to deference. *See Steagall*, 596 F. App'x at 381.

## IV.    CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's consideration of the evidence relating to Plaintiff's disability confirms the ALJ's decision was supported by substantial evidence in the record.

Accordingly, **IT IS RECOMMENDED** that:

1.    the Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed**;

2.    Plaintiff's Motion for Summary Judgment (R. 11) be **denied**;

3.    Commissioner's Motion for Summary Judgment (R. 12) be **granted**; and,

4.    Judgment be entered and this matter **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to

another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

Dated this 5th day of November, 2015.



Signed By:

*Candace J. Smith*

**United States Magistrate Judge**

I:\DATA\social security\15-13 Boggs R&R final.wpd